In the Matter of the Compensation of
Charmaine A. Frazier, Claimant.
FRAZIER,
*Petitioner,*

*v.*

UNITED PACIFIC INSURANCE et al,
*Respondents.*

(WCB 85-07844; CA A43670)

756 P2d 1253

Gary K. Jensen, Eugene, argued the cause and filed the brief for petitioner.

Brian L. Pocock, Eugene, argued the cause and filed the brief for respondents.

Before Warden, Presiding Judge, and Joseph, Chief Judge, and Van Hoomissen, Judge.

JOSEPH, C. J.

Warden, P. J., dissenting.

## JOSEPH, C. J.

Claimant seeks review of a Workers' Compensation Board order that reversed the referee's order holding an injury compensable. On *de novo* review, *former* ORS 656.298, we affirm.

Claimant testified that, in April, 1985, while employed as a shim packer on the swing shift, she pulled a wire from an overhead guide pipe to wrap around a bundle and the pipe, which weighed seven pounds, fell. She said that it struck her on the head, arm and hand. That occurred 15 minutes before her lunch break. She said that she went outside, vomited and returned to an adjacent work station for a few minutes but did not work. She went home during her lunch break and never returned to work. A co-worker, working nearby, heard the pipe hit the floor, turned, saw the pipe on the floor and claimant with her hand on her head and then heard her say, "Ouch." Claimant's supervisor heard about the accident within minutes of its occurrence and talked to claimant at the work station. She testified that, as she approached the station, unobserved by claimant, she noticed claimant rubbing her head. Claimant told her that she had been hit on the head but that she was "okay," and declined any assistance. Claimant told her mother about the accident when she got home. Her mother testified that she had looked drawn and pale then.

Claimant claims to have suffered nausea, dizziness and headaches. Four days after the accident, she sought medical advice. Dr. Byerly, her family physician, found no objective signs of injury but, and only on the basis of the symptoms related by claimant, diagnosed a contusion of the head and cervical vertebrae. Dr. Serbu, a neurosurgeon, examined claimant in June. He also found no objective signs of any injury. Employer denied her claim, and she requested a hearing.

The referee determined that claimant was not a reliable witness:

> "Her testimony attempts to place the pipe in a specific location that, by her admission, she did not pay any attention to prior to the time it fell. Her testimony regarding placement and method of attachment amounts to nothing more than a guess. Claimant's testimony is inconsistent with the

remainder of her testimony concerning where she had to reach to pull the wire down. She had no opportunity to observe it after it had been replaced, until the day of the hearing."

Nonetheless, the referee reasoned that "[j]ust because she is not reliable does not mean she is not credible." He then concluded that her testimony regarding the mechanics of the pipe's attachment to the ceiling was irrelevant, because there was no doubt that the pipe fell. He declined to accept the testimony of the plant manager that, given the location of the pipe, it could not possibly have hit claimant, because he concluded that the measurements which the manager made were unreliable. The referee held that claimant had met her burden of proving compensability by a preponderance of the evidence.

The precise basis for the Board's reversal is not clear, but it was, at least in part, the lack of objective medical evidence of any injury. Claimant repeatedly complained to her mother of headaches, dizziness and nausea after the supposed accident. Byerly found no cuts, bumps or other objective findings; neither did Serbu. There is, in fact, nothing in the record except claimant's testimony that she suffered any injury whatsoever. Furthermore, although there is evidence that the pipe fell to the floor, the evidence that claimant was hit is, to say the best of it, in equipoise.

It is worth noting that, contrary to what the dissent says, claimant did not even say so much as "ouch" until *after* the pipe had fallen to the floor and the co-worker had turned around and had seen the pipe on the floor. Claimant and her co-worker laughed about the incident; she told her supervisor that she was all right; and she did not report any physical symptoms of injury before leaving the mill during the lunch hour. The foreman's drawing of the workplace area, including measurements, and the testimony about attempts to re-create the accident make it very unlikely that anything happened in the way that claimant described it. The absence of any objective medical evidence of an injury, taken with the extremely weak evidence that claimant was hit by the pipe, persuades us that she has not proved entitlement to compensation.

Affirmed.

**WARDEN, P. J.,** dissenting.

I would hold that claimant met her burden of proving a compensable injury, and therefore I dissent.

The Board's reversal was based in part on the lack of objective medical evidence of an injury. Claimant repeatedly complained of headaches, dizziness and nausea since the time of the accident. She went to Dr. Byerly when her symptoms failed to subside after four days. That he found no cuts, bumps or other objective findings is not dispositive; she had come to him for treatment, and her statement was given to aid him in making a diagnosis. The history she gave to Serbu was consistent with that given Dr. Byerly and with her testimony. There is no doubt that the pipe fell, that she exclaimed when it did and that she was rubbing her head immediately afterward. That there was no objective medical evidence of injury is not enough for employer to deny the claim, when there is no reason to doubt that the incident causing injury occurred.

I quote the Board's other apparent ground for reversal:

"Claimant's strongest evidence comes from her coworker Ms. Davis [the co-worker]. However, Ms. Davis stated that claimant initially told her she was struck in the arm and hand. It was not until later that claimant told her she was struck in the head. No evidence was offered why claimant may have altered the location where she was struck."

The record does not support these recitals. Davis testified:

"Q. Okay. What did she look like to you, what did she do, what was she doing after it fell?

"A. She had her hand by — on her head.

"Q. She had her hand — on her head.

"A. And said, 'Ouch!' and said it hit her hand too."

I agree with the findings and conclusions made by the referee, who had the opportunity to observe the witnesses as well as the scene of the accident and, therefore, I respectfully dissent.